UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In the Matter of the Application of
225 NORTHPORT, LLC,

                                Petitioner/Plaintiff,              Case No.:  2:24-cv-02967
                                                                  (NJC)(ARL)

For a Judgment pursuant to CPLR Article 78 and for
other relief

       -against-

DAMON McMULLEN, JEREMY MALINE,
THOMAS J. KEHOE, MERCY SMITH,
IAN MILLIGAN, THE NORTHPORT VILLAGE
BOARD OF TRUSTEES, DONALD TESORIERO,
THE VILLAGE OF NORTHPORT and
TIMOTHY BROJER,

                               Respondents/Defendants.
-------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
# RESPONDENTS/DEFENDANTS' MOTION TO DISMISS

Lorin A. Donnelly, Esq.
MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP
*Attorneys for Respondents/Defendants*
DAMON McMULLEN, JEREMY
MALINE, THOMAS J. KEHOE,
MERCY SMITH, IAN MILLIGAN,
THE NORTHPORT VILLAGE BOARD
OF TRUSTEES, DONALD TESORIERO
and THE VILLAGE  OF NORTHPORT
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 870-1123
File No.:  67M-19233
ldonnelly@milbermakris.com

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

**TABLE OF AUTHORITIES** ...................................................................... iii

**PRELIMINARY STATEMENT** ............................................................. 1

**STATEMENT OF FACTS** ....................................................................... 1

**LEGAL STANDARD** .............................................................................. 4

**ARGUMENT** ........................................................................................... 6

**POINT I** ................................................................................................... 6

    **THE SAC FAILS TO STATE A 42 U.S.C. § 1983 CLAIM AGAINST THE VILLAGE UPON WHICH RELIEF CAN BE GRANTED**

**POINT II** .................................................................................................. 9

    **THE 42 U.S.C. § 1983 CLAIMS ASSERTED IN THE SAC WERE COMMENCED IN THE IMPROPER FORM AND ARE TIME BARRED**

**POINT III** ................................................................................................ 10

    **PLAINTIFF'S CLAIMS OF CONSTITUTIONAL VIOLATIONS BASED UPON 42 U.S.C. § 1983 ARE TIME BARRED**

**POINT IV** ................................................................................................ 12

    **THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER THE FIRST AMENDMENT**

**POINT V** .................................................................................................. 16

    **THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BASED UPON A VIOLATION OF THE FOURTEENTH AMENDMENT**

**POINT VI** ................................................................................................ 22

    **THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UPON A VIOLATION OF THE FIFTH AMENDMENT**

**POINT VII**............................................................................................................... 244

**THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST THE BOARD AND THE INDIVIDUAL DEFENDANTS**

**CONCLUSION** ..................................................................................................... 255

# TABLE OF AUTHORITIES

**Page**

*Cases*

*Agosto v. New York City Dep't of Educ.*,
  982 F.3d 86 (2d Cir. 2020)................................................................................. 6

*Anderson v. City of New York*,
  657 F. Supp. 1571 (S.D.N.Y. 1987)..................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................ 4, 5

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
  520 U.S. 397 (1997)............................................................................................ 7

*BE & K Const. Co. v. N.L.R.B.*,
  536 U.S. 516 (2002).......................................................................................... 12

*Beecher v. Dep't of Consumer Prot. for CT*,
  274 F. App'x 88 (2d Cir. 2008).......................................................................... 17

*Beekman Delamater Properties, LLC v. Vill. of Rhinebeck Zoning Bd. of Appeals*,
  150 A.D.3d 1099 (2d Dep't 2017)..................................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................ 4, 5

*Bensch v. Est. of Umar*,
  2 F.4th 70 (2d Cir. 2021) .................................................................................... 5

*Billeris v. Inc. Vill. of Bayville, New York*,
  No. 20CV03298HGST, 2023 WL 6214108 (E.D.N.Y. Sept. 25, 2023).................. 11

*Bower Assocs. v. Town of Pleasant Valley*,
  304 A.D.2d 259 (2d Dep't 2003).................................................................. 6, 22

*Buffalo Tchrs. Fed'n v. Tobe*,
  464 F.3d 362 (2d Cir. 2006).............................................................................. 24

*Butler v. City of Batavia*,
  323 F. App'x 21 (2d Cir. 2009).......................................................................... 12

*Cameron v. Johnson*,
  390 U.S. 611 (1968).......................................................................................... 13

*Church of Am. Knights of the Ku Klux Klan v. Kerik*,
  356 F.3d 197 (2d Cir. 2004).............................................................................. 20

*Ciambriello v. Cnty. of Nassau*,
  292 F.3d 307 (2d Cir. 2002).............................................................................. 16

*City of Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985)............................................................................................ 7

*Curley v. Vill. of Suffern*,
  268 F.3d 65 (2d Cir. 2001)................................................................... 12, 14, 15

*Davis v. Goord*,
  320 F.3d 346 (2d Cir. 2003)........................................................................ 13, 15

*Dean v. Town of Hempstead*,
  527 F. Supp. 3d 347 (E.D.N.Y. 2021) ..................................................... 15, 17, 19

*Ellis v. Wilkinson*,
   81 F. Supp. 3d 229 (E.D.N.Y. 2015) ............................................................ 15

*Hafer v. Melo*,
   502 U.S. 21 [1991] ........................................................................................ 25

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010)............................................................................ 5

*Highview Properties D.H.F. Inc. v. Town of Monroe*,
   606 F. Supp. 3d 5 [S.D.N.Y. 2022] ............................................................. 25

*Hogan v. Fischer*,
   738 F.3d 509 (2d Cir. 2013)........................................................................... 10

*Homere v. Inc. Vill. of Hempstead*,
   322 F. Supp. 3d 353 (E.D.N.Y. 2018) ........................................................... 8

*Horton v. Westling*,
   284 F. Supp. 3d 213 (N.D.N.Y. 2018).................................................... 17, 18

*Jones v. Town of Carroll*,
   177 A.D.3d 1297 (4th Dep't 2019)................................................................ 22

*Jordan v. New York City Bd. of Elections*,
   816 F. App'x 599 (2d Cir. 2020).................................................................... 19

*LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*,
   40 F.3d 587 (2d Cir. 1994)............................................................................ 19

*Lekic v. 222 E. 8th St. LLC*,
   No. CV 2011-1242 ARR MDG, 2012 WL 4447625 (E.D.N.Y. Sept. 25, 2012) ............. 11

*Little v. City of New York*,
   487 F. Supp. 2d 426 (S.D.N.Y. 2007)........................................................... 16

*Liverpool v. Davis*,
   442 F. Supp. 3d 714 (S.D.N.Y. 2020)........................................................... 11

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992)..................................................................................... 23

*MacPherson v. Town of Southampton*,
   738 F. Supp. 2d 353 (E.D.N.Y. 2010) .......................................................... 20

*Matter of Novara ex rel. Jones v. Cantor Fitzgerald, LP*,
   20 A.D.3d 103 (3d Dep't 2005)..................................................................... 22

*MetroPCS New York, LLC v. City of Mount Vernon*,
   739 F. Supp. 2d 409 [S.D.N.Y. 2010]........................................................... 25

*Missere v. Gross*,
   826 F. Supp. 2d 542 (S.D.N.Y. 2011)............................................................. 5

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).................................. 6, 7, 25

*Morrison v. Johnson*,
   429 F.3d 48 (2d Cir. 2005)............................................................................ 12

*Murr v. Wisconsin*,
   582 U.S. 383 (2017)....................................................................................... 23

*O'Mara v. Town of Wappinger*,
   485 F.3d 693 (2d Cir.).................................................................................... 17

*Omnipoint Commc'ns, Inc. v. Town of LaGrange*,
   658 F. Supp. 2d 539 [S.D.N.Y. 2009]........................................................... 24

*Panzella v. City of Newburgh*,
   231 F. Supp. 3d 1 (S.D.N.Y.) ............................................ 5, 19, 20, 21
*Park Ave. Tower Assocs. v. City of New York*,
   746 F.2d 135 (2d Cir. 1984).................................................................. 24
*Penn Cent. Transp. Co. v. City of New York*,
   438 U.S. 104 (1978)....................................................................... 23, 24
*Phillips v. Washington Legal Found.*,
   524 U.S. 156 (1998) ............................................................................ 22
*RRI Realty Corp. v. Inc. Vill. of Southampton*,
   870 F.2d 911 (2d Cir. 1989).................................................................. 17
*Ruston v. Town Bd. for Town of Skaneateles*,
   610 F.3d 55 (2d Cir. 2010)................................................................... 20
*S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*,
   624 F. Supp. 3d 261 (E.D.N.Y. 2022) .................................................. 24
*Sagaponack Ventures, LLC v. Bd. of Trustees of Vill. of Sagaponack*,
   171 A.D.3d 762 (2d Dep't 2019) .......................................................... 18
*Santos v. New York City*,
   847 F. Supp. 2d 573 (S.D.N.Y. 2012)..................................................... 7
*Shekhem′ El-Bey v. City of New York*,
   419 F. Supp. 2d 546 (S.D.N.Y. 2006).................................................... 12
*Snider v. Dylag*,
   188 F.3d 51 (2d Cir. 1999).................................................................... 6
*Sonne v. Bd. of Trustees of Vill. of Suffern*,
   67 A.D.3d 192 (2009) .......................................................................... 15
*Spear v. Town of W. Hartford*,
   954 F.2d 63 (2d Cir. 1992).................................................................... 13
*T-Mobile Ne. LLC v. Town of Ramapo*,
   701 F. Supp. 2d 446 [S.D.N.Y. 2009].................................................... 25
*Vill. of Belle Terre v. Boraas*,
   416 U.S. 1 (1974)................................................................................. 6
*Vill. of Willowbrook v. Olech*,
   528 U.S. 562 (2000) ............................................................................ 20
*Younger v Harris*,
   401 US 37 [1971]................................................................................ 13

Statutes

42 U.S.C. § 1983................................................................................ passim
N.Y. Village Law § 7-725-a (McKinney)................................................... 9
N.Y. Village Law § 7-740, 7-725-a, and 7-712-c (McKinney) .................... 9
U.S. Const. amend. I............................................................................. 12
U.S. Const. amend. V............................................................................ 22

Rules

Fed. R. Civ. P. 12(b)(6).............................................................. 1, 4, 5, 26
N.Y. C.P.L.R. 214 (McKinney) .............................................................. 11

## PRELIMINARY STATEMENT

Defendants, Damon McMullen, Jeremy Maline, Thomas J. Kehoe, Mercy Smith, Ian Milligan, The Northport Village Board Of Trustees, Donald Tesoriero and The Village Of Northport (collectively "Defendants") respectfully submit this memorandum of law in support of their application for an Order: (i) dismissing Seventh Cause of Action set forth in the Second Amended Complaint (the "SAC") pursuant to Fed. R. of Civ. 12(b)(6); and (ii) for such other, further, and different relief as this Honorable Court may deem just, proper, and equitable.

For the reasons set forth below, and in the accompanying Declaration of Lorin A. Donnelly, Esq. dated June 25, 2024, ("Donnelly Dec.") and the exhibits annexed thereto, Defendants' motion should be granted in its entirety.

## STATEMENT OF FACTS

This action arises out of the demolition of an existing structure and the development and construction of a hotel and restaurant located at 225 Main Street in the Village of Northport, New York (the "Northport Hotel") by Plaintiff. The construction and development of the hotel required a change to the Village's zoning laws after a full environmental assessment. *See* Donnelly Dec. at Exhibit "F."

On August 22, 2017, the Northport Village Board Of Trustees (the "Trustees") issued a resolution amending the Village Code adding a "Hotel/Inn" as a permitted use in the "A" Business District Amending the Village Zoning Map for the subject property located at 225 Main Street, Northport, New York. *Id.*

On October 25, 2017, Plaintiff submitted a Site Plan Application and Preliminary Site Plan Submission to The Village for the Proposed Northport Hotel. *See* Donnelly Dec. at Exhibit "G" annexed hereto. The Proposal for the Subject Property indicated that the new building would a

5,095±-square foot restaurant that was "estimated that [it] may accommodate approximately 200 customer seats, but the proposed layout has not been finalized." *Id.*

On February 26, 2019, the Village of Northport Planning Board conducted a Planning Board Meeting and adopted a Resolution granting preliminary plan approval. *See* Donnelly Dec. at Exhibit "H". On March 25, 2019, the Planning Board unanimously approved the Site Plan Application and granted final Site Plan approval with that provided for a restaurant with no more than 175 seats, 124 of which shall be regular restaurant seating and the balance in the bar area.

The Building Permit was issued on January 21, 2020. *See Donnelly Dec.* at Exhibit "B" at Exhibit 1. The Building Permit allowed Plaintiff to construct a new three story 24-Room Hotel/Inn and a 5,660 square foot accessory use restaurant.

On August 3, 2020, Plaintiff commenced this action in the Supreme Court by the filing of the original Petition and Complaint (the "OC"). Plaintiff sought relief pursuant to CPLR Article 78 vacating, annulling, or otherwise to set aside the determination of the Northport Village Building Department's Building Permit fee as it was improperly calculated, or that said sum is excessive and constitutes an unlawful tax. *Id.* In the OC, the Plaintiff asserted Six Causes of Action: CPLR Article 78; unjust enrichment; money had and received; return of an unlawful tax; declaratory relief; and incidental damages. *Id.*

On October 21, 2020, Plaintiff filed an Amended Petition and Verified Complaint ("AC") adding additional allegations and annexing various exhibits. *See* Donnelly Dec. at Exhibit "B."

On or about July 14, 2022, the Planning Board adopted a Resolution approving of the minor proposed modifications to the Site Plan *at the request of the Plaintiff*. The modifications increased the number of rooms in the hotel to 26, and reduced the square footage of the size of the restaurant. *See* Donnelly Dec. at Exhibit "J."

A Temporary Certificate of Occupancy (the "TCO") for a new three-story 26 room hotel with a 5542 square foot accessory use  restaurant was issued on July 27, 2023. *See* Donnelly Dec. at Exhibit "K."  A final Certificate of Occupancy was not issued due to a violation 2020 NYS Building Code, which provides that projections are not permitted where there is a 0'-2' foot fire separation distance between buildings. (2020 NYSBC, Ch. 7, §705 Exterior Walls, §705.2, Projections). *Id.*

On September 5, 2023, Plaintiff commenced an action against Panichella Holdings, LLC ("Panichella") in the Supreme Court, Suffolk County bearing Index No. 622086/2023. *See* Donnelly Dec. at Exhibit "L." Panichella is the owner of the premises adjoining  225 Main Street, Northport, NY. In that action, Plaintiff is seeking declaratory and injunctive relief  that the aerial encroachments minimally affect Panichella's property and are not required to be removed.  *Id.*

On  September 14, 2023, Panichella filed an appeal of the issuance of the TCO with the Village of Northport Board of Zoning Appeals due to the aerial overhang projections.  *See* Donnelly Dec. at Exhibit "M."

On  November 27, 2023, Plaintiff sought leave to amend the Amended Complaint and permission to file the Second Amended Complaint[1] (the "SAC")[2]. Defendants opposed the motion and cross-moved for a protective order.[3] The motion was fully submitted on or about March 19, 2024. On March 21, 2024, the Court issued a one-page  Order granting Plaintiff leave to amend the Amended Complaint and denied the cross-motion for a protective order. *See* Donnelly Dec. at Exhibits "C" and "D."

---

[1] *See 225 Northport, LLC v. Damon McMullen, et. ay., Suffolk County Index No. 609945/2020,*  New York State Courts Electronic Filing System ("NYSCEF") Doc. No. 212.
[2] Although the SAC did not specifically attach the Exhibits annexed to the AC, such Exhibits were referred to in the SAC.
[3] *See 225 Northport, LLC v. Damon McMullen, et. ay., Suffolk County Index No. 609945/2020,* NYSCEF Doc. Nos. 225-285.

The SAC newly asserted the Seventh Cause of Action based upon 42 U.S.C. § 1983 predicated upon violations of the First, Fifth, and Fourteenth Amendments. The SAC alleges that the Defendants interfered with Plaintiff's constitutionally protected rights in imposing "illegal and excessive fees," imposed irrational and illegal pre-conditions and limitations on permits, approvals, and the issuance of a Certificate of Occupancy; and imposing an illegal and discriminatory limitation on the number of seats allowed in Plaintiff's restaurant, and discriminatorily required Plaintiff to incur completely unnecessary costs in connection with municipal approvals. *See* Donnelly Dec. at Exhibit "E" at ¶ 94.

The SAC alleged that Plaintiff was and is being discriminated against in part because its restaurant will compete with other restaurants in the VILLAGE and that "on information and belief" unidentified Village officials had ownership or other interests in those other restaurants and who were political supporters of Village officials and Board members. *Id.* at ¶99. Plaintiff further alleges that it was discriminated against in retaliation for Plaintiff's exercised its First Amendment right to petition the Court. *Id.* at ¶100. Plaintiff claims that such "discriminatory treatment" continued after this action was commenced. *Id.* at ¶102. The SAC alleges that such treatment was discriminatory and resulted in disparate treatment of Plaintiff compared to other similarly situated property owners in the Village. *Id.* at ¶103.

## <u>LEGAL STANDARD</u>

When faced with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court evaluates the sufficiency of the complaint in accordance with the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and formalized in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under the first prong of that approach, the court identifies bare-boned factual assertions, conclusory statements, and threadbare recitations of the elements of a

cause of action. *Ashcroft*, 556 U.S. 662*; Bell Atlantic Corp.*, 550 U.S. 544 These are not entitled to the assumption of truth and are disregarded – they are not sufficient to withstand a motion to dismiss. *Id*.; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). Under the second prong of the approach, courts identify non-conclusory and well-pleaded factual allegations, assume their veracity, and use them to assess the crux of a plaintiff's complaint and determine whether it sets forth a plausible claim for relief. *Id*.

To survive a motion to dismiss, a complaint's allegations must meet a minimum standard of plausibility, meaning that the court may draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*., *quoting*, *Bell Atlantic Corp.*, 550 U.S. at 556. The pleading must contain "sufficient factual matter" in order to satisfy the "'plausibility standard.'" *Bensch v. Est. of Umar*, 2 F.4th 70, 72–73 (2d Cir. 2021).

In adjudicating a Fed. R. Civ. P. 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken*. Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 6 (S.D.N.Y.), *aff'd,* 705 F. App'x 50 (2d Cir. 2017). Furthermore, it is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) including provisions of the applicable code, a municipal board's determination, and  the contents of a resolution. *See Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011).

**ARGUMENT**

**POINT I**

**THE SAC FAILS TO STATE A 42 U.S.C. § 1983 CLAIM AGAINST
THE VILLAGE UPON WHICH RELIEF CAN BE GRANTED**

42 U.S.C. § 1983 provides, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983, upon which Plaintiffs depends, does not guarantee a person the right to bring a federal suit for denial of due process in every proceeding in which he is denied a license or a permit. *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 13 (1974). A federal court 'should not... sit as a zoning board of appeals.' *Id.* 42 U.S.C. § 1983 is not simply an additional vehicle for land-use determinations. *Bower Assocs. v. Town of Pleasant Valley*, 304 A.D.2d 259, 263 (2d Dep't 2003), *aff'd,* 2 N.Y.3d 617 (2004).

To establish a *prima facie* case that a municipal actor has violated 42 U.S.C. § 1983, a plaintiff must show that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States. *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

The SAC fails to state a 42 U.S.C. § 1983 claim against The Village of Northport ("The Village"), upon which relief can be granted. A 42 U.S.C. § 1983 claim against a municipality is governed by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) and its progeny. *Monell* expressly prohibits *respondeat superior* liability for municipalities, meaning that a plaintiff must demonstrate that through its deliberate conduct, *the municipality was the moving force* behind the injury alleged (emphasis added). *Agosto v. New York*

*City Dep't of Educ.*, 982 F.3d 86, 97–98 (2d Cir. 2020). The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right. *Id.* at 97.

For a plaintiff to have recourse against a municipality for violations of federally-protected rights pursuant to 42 U.S.C. § 1983, they must allege facts demonstrating (1) the existence of an officially-adopted "policy, custom, or practice" and (2) a direct and deliberate causal connection between that "policy, custom, or practice" and the violation of plaintiff's federally-protected rights. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997); *Monell*, 436 U.S. at 694.

Furthermore, a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents under § 1983. Nor can a "policy, custom, or practice" arise from a single instance of unconstitutional conduct by a municipal employee who is not a municipal policymaker under state law. *Santos v. New York City*, 847 F. Supp. 2d 573, 576–77 (S.D.N.Y. 2012). Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–824 (1985). Furthermore, a plaintiff cannot infer a "policy" from the alleged violation of its *own* civil rights. *Anderson v. City of New York*, 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987).

The SAC fails to contain any allegations whatsoever that The Village engaged in conduct pursuant to a *policy, custom, and practice* that deprived it of any constitutional rights. Paragraph 92 of the Proposed SAC, simply alleges in conclusory fashion that Defendants "at all relevant times acted pursuant to official policy, custom, practices and/or procedures endorsed and approved

by the Village and its policymakers." This allegation is simply conclusory that is was wholly unsupported by any allegations of fact identifying the nature of that conduct or that policy or custom which the conduct purportedly advanced. Due to the speculative nature of Plaintiff's assertions and the absence of any facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists, Plaintiff's allegations are insufficient to state a claim for municipal liability under 42 U.S.C. § 1983. *Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 371 (E.D.N.Y. 2018). Even if individual Village employees violated Plaintiffs' rights, in the absence of a municipal policy or custom, the Village may not be held liable for these actions simply because they were committed by actors who were its employees. *Id.*

The SAC alleges that Timothy Brojer committed certain acts which form the basis of the constitutional claims. The SAC alleges that Mr. Brojer was the Village Administrator, but lacks the requisite allegations that he was a "policymaker." The SAC fails to allege any provision within the Northport Village Code that dictated that Mr. Brojer was a policy-maker or that he had any decision-making authority as opposed to merely reporting to the elected officials. Since Mr. Brojer was not a policy-maker, such claims against the Village further fail as a matter of law. It should be noted that Mr. Brojer resigned from The Village on or about September 3, 2019.[4]

Even accepting as true that Mr. Brojer made any of the alleged statements set forth in the SAC, the Proposed SAC does not allege, nor do the facts support a claim that Mr. Brojer's alleged action were motivated resulted from official municipal *policy, custom, and practice*.

---

[4] Northport administrator arrested, resigns, officials said - Newsday, September 4, 2019.

**THE 42 U.S.C. § 1983 CLAIMS ASSERTED IN THE SAC WERE
COMMENCED IN THE IMPROPER FORM AND ARE TIME BARRED**

New York Village Law authorizes an Article 78 proceeding as the proper mechanism for challenging a decision by a Village Board, including to challenge a planning board decision or site plan review, the very decisions which Plaintiff seeks to challenge via this action. *See* N.Y. Village Law § 7-740, 7-725-a, and 7-712-c (McKinney). In all instances, this proceeding must be brought within 30 days of the filing of the decision of the board in the office of the village clerk. *Id.*

With respect to village Planning Board decisions, N.Y. Village Law § 7-740 provides that any person or persons, aggrieved by any decision of the planning board concerning may bring a CPLR Article 78 proceeding within thirty days after the filing of the decision in the office of the village clerk. Similarly, with respect to Site Plan Approvals, N.Y. Village Law § 7-725-a (McKinney) (Site Plan Review) provides that any person aggrieved by a decision of the authorized board or any officer, department, board or bureau of the may bring a CPLR Article 78 proceeding within thirty days after the filing of the decision in the office of the village clerk.

In addition, the Village of Northport Code gives the Planning Board with broad discretion to approve, disapprove *or approve with modifications,* site development plans for property located in the Village. Village of Northport Code § 219-16 Power of Planning Board. *Also see,* Village of Northport Code §§ 247-1 and 247-2.

Here, under the guise of a 42 U.S.C. § 1983 claim, Plaintiff essentially seeks review of the Planning Board's determination that "limited" the restaurant's maximum seating capacity and/or limitation on the number of seats allowed in the restaurant. The number of seats was approved on February 26, 2019 and on March 25, 2019. *See* Donnelly Dec. at Exhibits "H" and "I." Thereafter,

on July 14, 2022, the Planning Board issued another resolution approving minor proposed modifications to the site plan, as requested by Plaintiff. *See* Donnelly Dec. at Exhibit "J".

As a special proceeding was created via CPLR Article 78 and authorized by various sections of the New York Village Law, such a proceeding is the exclusive form in which an action for the relief sought by Plaintiff may be prosecuted. *See* Village of Northport Code §32-6.1(c).

Furthermore, it is well settled that a local planning board has broad discretion in reaching its determination on site plan and special permit applications, and judicial review is limited to determining whether the action taken by the board was illegal, arbitrary, or an abuse of discretion. *Beekman Delamater Properties, LLC v. Vill. of Rhinebeck Zoning Bd. of Appeals*, 150 A.D.3d 1099, 1102–03 (2d Dep't 2017).

Therefore, Plaintiff's only remedy to obtain the relief sought herein as it relates to the reduction in seating capacity or any modification to the site plan was a special proceeding pursuant to CPLR Article 78. Plaintiff did not commence an Article 78 Proceeding against the Planning Board within 30 days and the time within to do so has expired. As such, Plaintiff's claims that relate to any determinations by the Planning Board relating to seating capacity or otherwise have been brought in an improper form and are barred by the statute of limitations.

**POINT III**

**PLAINTIFF'S CLAIMS OF CONSTITUTIONAL VIOLATIONS
BASED UPON 42 U.S.C. § 1983 ARE TIME BARRED**

The statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is determined by state law, and in New York State, the statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is three years. Causes of action asserted pursuant to 42 U.S.C. § 1983 have a three-year statute of limitations in New York. *See* N.Y. C.P.L.R. 214 (McKinney). *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). The limitations period begins to run when: (i) the plaintiff knows

or has reason to know of the injuries caused by an individual defendant, or (ii) the plaintiff knows or has reason to know that a municipal defendant has an unconstitutional "policy or custom." *Liverpool v. Davis*, 442 F. Supp. 3d 714, 724 (S.D.N.Y. 2020).

In general, the date of the filing of the motion to amend is the date the action was commenced for statute of limitations purposes since the defendant is on notice of the new claims upon the filing of the motion. *Lekic v. 222 E. 8th St. LLC*, No. CV 2011-1242 ARR MDG, 2012 WL 4447625, at *4 (E.D.N.Y. Sept. 25, 2012). Here, on November 27, 2023, Plaintiff moved to amend the Amended Petition and Complaint, thus, the cause of action pursuant to 42 U.S.C. § 1983 arising out of any of the Defendants' alleged constitutional violations are deemed interposed as of that date. Thus, November 27, 2023 governs the timeliness of the 42 U.S.C. § 1983 claims.

Given that the statute of limitations is three years, the 42 U.S.C. § 1983 claims must have accrued on or after November 27, 2020. However, due to Governor Cuomo's March 20, 2020 Executive Order No. 202.8, the statute of limitations were tolled for a total of 228 days. If the period of the toll is excluded from the aforementioned calculation, and giving Plaintiff an additional 228 days to assert a claim, any alleged violations must have accrued on or after April 13, 2020 in order to be timely. Based upon the allegations of the SAC, Plaintiff knew or had reason to know of the injuries caused by an individual defendant, or that a municipal defendant has an unconstitutional "policy or custom" prior to the expiration of the statute of limitations. Accordingly, to the extent that the alleged constitutional violations occurred before April 13, 2020, they are time barred.

The Fifth Amendment takings claim is barred by the statute of limitations. Plaintiff's takings claim accrued when the Defendants allegedly deprived her of her property. *Billeris v. Inc. Vill. of Bayville, New York*, No. 20CV03298HGST, 2023 WL 6214108, at *6 (E.D.N.Y. Sept. 25,

2023). The Fourteenth Amendment claims are also time barred as they accrued once Plaintiff received a decision from the Defendants as to site plan approval. *See Id.* at \*8. As previously set forth herein, the Plaintiff received site plan approval on February 27, 2019, or at the latest March 25, 2019 Thus, Plaintiff's Fifth and Fourteenth Amendment accrued on February 27, 2019, or at the latest March 25, 2019, prior to April 13, 2020, and as such, those claims are time barred.

<u>**POINT IV**</u>

**THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF <u>CAN BE GRANTED UNDER THE FIRST AMENDMENT</u>**

The First Amendment to the U.S. Constitution provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances. U.S. Const. amend. I. The right of access to the courts is part of the right to petition. *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002).

The SAC alleges that after this proceeding, the Defendants "adversely treated and discriminated against…Plaintiff in retaliation for…Plaintiff having exercised its First Amendment right to petition the courts." *See* Donnelly Dec. at Exhibit "E" at ¶¶ 100, 108(d).

The elements of a cause of action alleging deprivation of the right of free speech are (1) plaintiff has an interest protected by the First Amendment, (2) defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively chilled the exercise of her First Amendment right. *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see Butler v. City of Batavia*, 323 F. App'x 21 (2d Cir. 2009); *Morrison v. Johnson*, 429 F.3d 48, 50 (2d Cir. 2005). The allegations must be non-conclusory. *Shekhem' El-Bey v. City of New York*, 419 F. Supp. 2d 546, 552 (S.D.N.Y. 2006). A plaintiff must make specific *allegations of fact* supporting the foregoing three requirements for a First Amendment claim, and allegations

which are nothing more than broad, simple and conclusory statements are insufficient to state a cause of action. *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).

While the First Amendment protects the right to initiate traditional litigation, the Supreme Court has held that governmental entities may act properly in furtherance of legitimate state interests, even though such state action incidentally chills First Amendment rights. *Younger v Harris*, 401 US 37, 51, 91 [1971]. Any chilling effect that flows from good-faith enforcement of a valid statute would not, of course, constitute that enforcement an impermissible invasion of protected freedoms. *Cameron v. Johnson*, 390 U.S. 611, 619 (1968). To state a claim for denial of access to the courts, a plaintiff must allege that the defendant "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

While the right to initiate litigation is a First Amendment right, the claim in the SAC does not allege that Defendants hindered Plaintiff pursuing a legal claim. In this regard, the SAC alleges in conclusory fashion that after Plaintiff commenced this action, the Defendants adversely treated and discriminated Plaintiff by steps and efforts to block and drive up costs of the opening of the Northport Hotel, by artificially reducing the number of seating capacity and occupancy at the restaurant, imposed irrational and illegal preconditions on the Certificate of Occupancy and engage in disparate treatment compared to similarly situated property owners. *See* Donnelly Dec. at Exhibit "E" at ¶¶ 94, 100-102.

The claims of First Amendment violations lack any merit whatsoever. First, the SAC fails to allege any particularized facts or statements by Defendants indicating what specific steps and efforts they allegedly took to block and drive up the cost of the opening the Hotel or how or when Defendants reducing the seating capacity of the restaurant after the commencement of this action.

The allegations surrounding the seating capacity claim are conclusory and fail to particularize what the intended seating capacity was, and the current seating capacity of the restaurant. Plaintiff further fails to recognize that the alleged "reduction" in a non-finalized estimated 200 seating capacity restaurant occurred at the latest on March 25, 2019, and not after the commencement of this litigation. Moreover, after the commencement of this proceeding, *Plaintiff* sought a modification of the Site Plan, which decreased the square footage of the restaurant, and was approved by the Planning Board. *See* Donnelly Dec. at Exhibit "J." Thus, the claim that seating capacity was reduced after the commencement of this action in retaliation of Plaintiff's First Amendment rights fails as a matter of law.

In addition, as it relates to the claim of retaliation based upon the issuance of the Certificate of Occupancy, the Certificate of Occupancy has not been issued since the Hotel, as constructed by Plaintiff, violates the New York State Building Code, and not because of some purported retaliatory motive. *See* Donnelly Dec., Exhibit "K". The issuance of the Certificate of Occupancy was and has been delayed due the dispute between Plaintiff and Panichella Holdings, LLC ("Panichella"), the owner of the adjacent property located at 231-239 Main Street, Northport, NY arising out of the encroachment. The encroachment resulted in an appeal of the issuance of the TCO by Panichella and an action filed by Plaintiff in the Supreme Court, Suffolk County against Panichella. *See* Donnelly Dec. at Exhibits "L" and "M." Throughout this time, the Village has extended the expiration of the TCO in order for Plaintiff and Panichella to resolve the issues regarding the encroachment. *See* Donnelly Dec. at Exhibit "N."

As the SAC alleges no facts to indicate any causal connection between Defendants' actions and Plaintiffs' purported speech, Plaintiffs' claims are wholly insufficient to plausibly assert a retaliation claim. *Curley*, 268 F.3d at 73. Furthermore, the act of defending this lawsuit does not

give rise to a plausible First Amendment retaliation claim, or to a plausible claim based on any of the other constitutional violations alleged by Plaintiff—including an Equal Protection violation, as well as procedural and substantive due process violations. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 235 (E.D.N.Y. 2015).

More importantly, the SAC fails to allege how the Defendants' conduct chilled its exercise of its First Amendment Right to petition the government. To establish First Amendment standing, a plaintiff must show injury to constitutionally protected expression; allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 402 (E.D.N.Y. 2021).

In *Sonne v. Bd. of Trustees of Vill. of Suffern*, 67 A.D.3d 192, 205 (2009), the Appellate Division, Second Department New York court, reviewing the Second Circuit law, required that the plaintiff must allege how the defendants' actions actually chilled her exercise of her First Amendment Rights. *See Curley*, 268 F.3d at 73. Moreover, In regard to the element of "chilling" exercise of First Amendment speech, the complaint must allege facts demonstrating that the defendants' action effectively compelled to the plaintiff to cease or "tone down" certain protected speech, and a naked assertion of a chill does not suffice to state a cause of action. *Id.*

Here, the SAC does not contain particularized facts that the Defendants' actions compelled the Plaintiff to cease their right to initiate and continue to prosecute this action in violation of Plaintiff's First Amendment Rights. In addition, SAC does not allege that the Defendants took or was responsible for actions that hindered Plaintiff's efforts to pursue a legal claim in this action. *See Davis*, 320 F.3d at 351. Nor does the SAC allege any conduct by Defendants that as a result of the commencement of this lawsuit, Plaintiff suffered from some concrete harm. Indeed, the public records indicate otherwise. Thus, the SAC does not satisfy the third element required to

properly assert a First Amendment violation claim, *i.e.*, the Defendants' conduct chilled its exercise of its First Amendment Right.

Based upon the foregoing, the SAC fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 claim based upon a violation of the First Amendment.

### POINT V

### THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BASED UPON A VIOLATION OF THE FOURTEENTH AMENDMENT

The Fourteenth Amendment of the Constitution provides that [n] o state … shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. Plaintiff's claim that Defendants denied them property without due process fails as a matter of law. As a threshold matter, this case does not involve a denial of a license or a permit or even a revocation of a license or permit implicating Fourteenth Amendment Rights.

The Fourteenth Amendment protects not only against procedural unfairness, but also against "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense; it does not, however, protect against government action that is merely "incorrect or ill-advised. *Little v. City of New York*, 487 F. Supp. 2d 426, 443 (S.D.N.Y. 2007). To show a violation of substantive due process, plaintiff must: (1) identify the constitutional right at stake, and (2) demonstrate that the government action was conscience-shocking or arbitrary in the constitutional sense. *Id.* Government actions that have risen to the level of conscious-shocking behavior typically meet a high bar. *Id.*

The threshold questions are whether Plaintiff has alleged a state law property interest, and whether the Fourteenth Amendment protects that interest. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307 (2d Cir. 2002). A violation of state law that does not rise to the level of a constitutional

deprivation cannot support a 42 U.S.C. § 1983 claim. *See Beecher v. Dep't of Consumer Prot. for CT*, 274 F. App'x 88, 89–90 (2d Cir. 2008). The Second Circuit uses a strict entitlement test to determine whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment. *Dean*, 527 F. Supp. 3d at 423.

Generally, to establish a substantive due process violation, a plaintiff must (1) identify the constitutional right at stake and (2) demonstrate that the government's action were conscience-shocking or arbitrary in the constitutional sense. *Horton v. Westling*, 284 F. Supp. 3d 213, 222 (N.D.N.Y. 2018), *aff'd,* 765 F. App'x 531 (2d Cir. 2019). The "shock the conscience" standard is not easily met; the plaintiff must show that the government's conduct was egregious and outrageous, it is not merely incorrect or ill-advised. *Id.* In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the due process clause, a landowner must show a clear entitlement to that benefit. *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir.), *certified question accepted,* 8 N.Y.3d 957, 868 N.E.2d 213 (2007), and *certified question answered,* 9 N.Y.3d 303, 879 N.E.2d 148 (2007), *certified question accepted,* 8 NY3d 957 [2007], and *certified question answered,* 9 NY3d 303 [2007]. A mere "abstract need or desire" for the benefit is insufficient. *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 915 (2d Cir. 1989). This "clear entitlement" test must be applied with "considerable rigor." *Id.* at 918.

In the SAC, Plaintiff alleges in conclusory fashion that the Building Permit fee calculation violated his due process and equal protection rights. This is not the type of property interest that the Fourteenth Amendment substantive due process protects, but is subject to Article 78 review.

As it relates to the claim of the reduction in seating capacity, Plaintiff has no vested property interest in the number of seats allowed in the restaurant. The SAC fails to allege the seating capacity requested, the seating capacity permitted by the New York State Fire and

Prevention Code, the current seating capacity, and the actions taken by any of the Defendants that reduced the seating capacity of the restaurant from the 174 originally approved. The Site Plan estimated that the restaurant *may* accommodate 200 seats, but that number had not been finalized. The SAC further ignores the fact that the Planning Board has broad discretion in approving, disapproving *or approving with modifications* Site Plan. Significantly, the SAC fails to take into account that any reduction in *square footage* of the restaurant was a consequence of the Plaintiff modifying the original site plans to accommodate two additional hotel rooms. Notwithstanding, the seating capacity of a restaurant is simply not a property right encompassed by the Fourteenth Amendment.

Furthermore, under New York Law, a local planning board has broad discretion in reaching its determination on site plan and special permit applications, and judicial review is limited to determining whether the action taken by the board was illegal, arbitrary, or an abuse of discretion and subject to Article 78 review. *Sagaponack Ventures, LLC v. Bd. of Trustees of Vill. of Sagaponack*, 171 A.D.3d 762, 763 (2d Dep't 2019). Since Plaintiff failed to commence timely Article 78 Proceedings against the Planning Board, review in this action is precluded.

Nevertheless, Plaintiff's substantive due process cause of action still fails to sufficiently allege the second element of the claim – that the government action was wholly without legal justification and infringed on that "property right" in an arbitrary or irrational manner. To satisfy this burden, a plaintiff must demonstrate that the defendant's actions were "so egregious, so outrageous, that they may fairly be said to shock the contemporary conscience." *Horton*, 284 F. Supp. 3d at 222.

Here, the alleged conduct in the SAC was not so egregious, so outrageous, that they may fairly be said to shock the contemporary conscience that implicates federal constitutional law.

Thus, the SAC allegations of a violation of the due process clause of the Fourteenth Amendment have no merit and fail the plausibility test.

Equally unavailing is the claim that the Defendants violated the equal protection clause of the Fourteenth Amendment. The Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the laws. The Equal Protection Clause prohibits government officials from intentionally discriminating against individuals based on their race, ethnicity, gender or national origin. *Dean*, 527 F. Supp. 3d at 430.

To state a claim for equal protection, a plaintiff can proceed on both a selective enforcement and a class-of-one theory. *See Jordan v. New York City Bd. of Elections*, 816 F. App'x 599, 603–04 (2d Cir. 2020). Where a plaintiff is treated unequally compared with others similarly situated, and when such treatment is based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person," the facts give rise to a claim of selective enforcement. *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994).

To state an equal protection claim on a theory of selective enforcement or selective treatment, a plaintiff must show that: (1) they compared with others similarly situated, were selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff. *Panzella*, 231 F. Supp. 3d at 7.

Similarly, equal protection claims based on a so-called "class of one" theory involve claims where the plaintiff alleges that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). Factual allegations showing that plaintiff was treated differently compared to others similarly situated is mandatory. *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004). Conclusory allegations do not suffice. *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010). In assessing the merits of such a claim, the Complaint must contain well-pled facts showing that the plaintiff has been treated differently from others similarly situated, which is an essential component of such a claim and conclusory allegations of selective treatment are insufficient to state an equal protection claim. *Panzella*, 231 F. Supp. 3d at 8.

To allege an Equal Protection Clause violation under a class-of-one theory, the plaintiff must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake. *Panzella*, 231 F. Supp. 3d at 7. In other words, a plaintiff asserting a 'class of one' equal protection claim must allege that the intentional disparate treatment alleged to state the first element of the claim was wholly arbitrary or irrational. *Id.*

The SAC alleges that the restaurant named "Rockin Fish" is the similarly situated comparator. *See* Donnelly Dec. at Exhibit "E", ¶¶ 105-106. Nevertheless, the SAC fails to allege that the Northport Hotel's restaurant and Rockin Fish were similar in size or scope, that they were approved during the same time frame, or that Rockin Fish required the same governmental approvals. The SAC is silent as to any characteristics of Rockin Fish, and any factors that

demonstrate that Rockin Fish is similarly situated. The SAC does not set forth the square footage of Rockin Fish as compared to Plaintiff's restaurant; it does not allege that Rockin Fish qualifies as an accessory use restaurant; it does not allege that Rockin Fish is a restaurant located in a hotel; it does not allege that Rockin Fish needed and obtained permits or Planning Board approval for anything that it did to commence any operations as a restaurant; and failed to set forth specific allegations that these two restaurants were so similarly situated that no rational person could see them as different. While the SAC identifies Rockin Fish as a restaurant on the same street, such bare allegations do not infer that Rockin Fish and the Restaurant at the Northport Hotel are similarly situated vis-à-vis the Village. The fact that they are both restaurants is not determinative. It is the Village's alleged mistreatment of Plaintiff, and favorable treatment to Rockin Fish, in similar situations that must be evaluated. In the absence of a showing of the similarity in circumstance's between Rockin Fish and the Restaurant at the Northport Hotel, the SAC fails to state a Fourteenth Amendment Equal Protection claim.

Regardless of which standard the Court applies—the "extremely high degree of similarity" standard used in class-of-one cases or the less demanding standard some courts apply to selective enforcement claims—these allegations in the SAC fall far short of identifying a similarly situated comparator. *See Panzella*, 231 F. Supp. 3d at 9. The only similarity alleged in the Proposed SAC is that they are both restaurants on Main Street in Northport, which is insufficient as a matter of law. Notwithstanding the foregoing, the SAC further fails to establish malicious or bad faith intent to injure the Plaintiff other than conclusory allegations. Even different treatment of persons similarly situated, without more, does not establish a claim. What matters is impermissible motive: proof of action with intent to injure—that is, proof that the applicant was singled out with an "evil

eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances. *Bower Associates*, 2 N.Y.3d at 631.

As such, the SAC fails to state a claim upon which relief can be granted under the Fourteenth Amendment.

## POINT VI

### THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UPON A VIOLATION OF THE FIFTH AMENDMENT

The Fifth Amendment provides that "[n]o person shall…be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. U.S. Const. amend. V. The SAC alleges that Plaintiff had a "vested property interest" both before and after the issuance of the Building Permits, and that the Defendants violated Plaintiff's rights to be free of exactions as guaranteed by the Fifth Amendment. *See* Donnelly Dec. at Exhibit "E" at ¶¶ 94 and 108(c).

Whether Plaintiffs have a protected property interest is a two-step inquiry. First, because the United States Constitution "protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.' " *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998). Second, though the property interest springs from state law, "federal constitutional law determines whether the interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause. Under New York law, where there is nothing more than an expectancy interest, it is not a vested property right, and it is an insufficient basis upon which to find a takings clause violation. *Jones v. Town of Carroll*, 177 A.D.3d 1297, 1299 (4th Dep't 2019). *Matter of Novara ex rel. Jones v. Cantor Fitzgerald, LP*, 20 A.D.3d 103, 108 (3d Dep't 2005). The initial seating capacity of the restaurant was simply an expectancy interest, and therefore, any alleged

reduction in the *expectancy interest* is an insufficient basis to find a "taking" under the Fifth Amendment.

Moreover, a *restriction on the right to use* property rarely triggers the automatic-taking rule. The rule applies only if a use restriction bars a landowner from engaging in "all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). Here, the Board of Trustees specifically changed the zoning laws of the Village of Northport to allow the development of the hotel/inn in the Village specifically for Plaintiff. Next, the Planning Board not only approved the original Site Plan, but the modified the Site Plan to accommodate the changes made *by Plaintiff*. Plaintiff was then issued a Temporary Certificate of Occupancy and is currently operating the hotel and restaurant. A Certificate of Occupancy has not been issued since the Hotel, as constructed by Plaintiff, violates the New York State Building Code, and because the dispute between Plaintiff and the abutting owner. Since the Plaintiff was not deprived of *any economically beneficial or productive use of land,* Plaintiff does not have a legitimate claim of a "taking" under the Fifth Amendment.

Furthermore, the SAC fails to allege that the suffered a taking under any of the factors espoused in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978). Under *Penn Central*, taking may be found based on "a complex of factors," including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Murr v. Wisconsin*, 582 U.S. 383, 384 (2017).

The SAC does not allege that Plaintiff suffered any economic impact due to the Planning Board's determination as to the number of seats allowed in the restaurant. Regarding economic impact, it is clear that prohibition of the most profitable or beneficial use of a property will not

necessitate a finding that a taking has occurred. *Park Ave. Tower Assocs. v. City of New York*, 746 F.2d 135, 139 (2d Cir. 1984). Indeed, Plaintiff has not been effectively prevented from making any economic use of its property. *See S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261, 276 (E.D.N.Y. 2022). The SAC further fails to set forth that the reduced seating capacity has interfered with distinct investment-backed expectations. This is borne out by the fact in the Site Plan Application, Plaintiff only provided an estimate of the number of seats in the restaurant. The SAC does not allege an investment-backed expectation in the number of seats, let alone one that transforms this case into a regulatory taking compensable under the Fifth Amendment.

Finally, the nature of the Planning Board's action is uncharacteristic of a regulatory taking. It is a negative restriction rather than an affirmative exploitation by the state. *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006). Nothing is affirmatively taken by the government. *Id.* Thus, under *Penn Central*, the SAC fails to state a plausible taking claim under the Fifth Amendment.

Based upon the foregoing, the SAC fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 claim based upon a violation of the Fifth Amendment.

## POINT VII

### THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST THE BOARD AND THE INDIVIDUAL DEFENDANTS

The claims against the Village Board of Trustees should be dismissed. Under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued. *Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 [S.D.N.Y. 2009]. The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which

the municipality acted. *Id. Also see*, *MetroPCS New York, LLC v. City of Mount Vernon*, 739 F. Supp. 2d 409, 419 [S.D.N.Y. 2010]; *T-Mobile Ne. LLC v. Town of Ramapo*, 701 F. Supp. 2d 446, 463 [S.D.N.Y. 2009] n. 5 (holding that Town Board is not an independent legal entity). Therefore, the Court should dismiss the claims against The Northport Village Board Of Trustees.

Further, official capacity claims against individual municipal employees "represent only another way of pleading an action against" the municipality. *Monell,* 436 U.S. at 691. Claims against a government employee in his official capacity are treated as a claim against the municipality. *Hafer v. Melo,* 502 U.S. 21, 25 [1991]. Therefore, as all of the individual defendants are sued for alleged conduct in their official capacities, the Court should dismiss the claims against the individual Defendants. *See Highview Properties D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 26–27 [S.D.N.Y. 2022].

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss the Seventh Cause of Action pursuant to Fed. R. Civ. P. 12(b)(6) should be granted in its entirety, and grant to the Defendants such other further and different relief as to the Court is just proper and equitable.

Dated: Woodbury, New York
June 25, 2024

Respectfully submitted,

MILBER MAKRIS PLOUSADIS & SEIDEN, LLP

By: _Lorin A. Donnelly_
LORIN A. DONNELLY
*Attorneys for the Respondents-Defendants,*
DAMON McMULLEN, JEREMY MALINE, THOMAS J. KEHOE, MERCY SMITH, IAN MILLIGAN, THE NORTHPORT VILLAGE BOARD OF TRUSTEES, DONALD TESORIERO, and THE VILLAGE OF NORTHPORT
1000 Woodbury Road, Ste. 402, Woodbury, NY 11797
(516) 870-1123 // File No.: 67M-19233
ldonnelly@milbermakris.com