UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| 225 Northport, LLC, | |
| *Plaintiff,* | 24-CV-2967 (ARR) (ARL) |
| -against- | **OPINION & ORDER** |
| Village of Northport, the Northport Village Board of Trustees, Damon McMullen, Jeremy Maline, Thomas Kehoe, Mercy Smith, Ian Milligan, Donald Tesoriero, and Timothy Brojer, | |
| *Defendants.* | |

ROSS, United States District Judge:

This action arises out of plaintiff 225 Northport, LLC's efforts to develop and operate a hotel and restaurant, operated from a single structure (the "Building"), located in the Village of Northport (the "Village"). *See* Second Amended Complaint ("SAC"), ECF No. 1-6. Defendants are the Village of Northport, the Northport Village Board of Trustees (the "Board"), Messrs. Damon McMullen, Jeremy Maline, Thomas Kehoe, Mercy Smith, and Ian Milligan (five of the Board's members), Donald Tesoriero (Plans Examiner and Assistant to the Mayor of Northport), and Timothy Brojer (Village Administrator of Northport). *Id*. ¶¶ 5, 31. Before me now is defendants' motion to dismiss the SAC's "Seventh Cause of Action," which asserts various claims under 42 U.S.C. § 1983 premised on defendants' alleged violation of plaintiff's (1) First Amendment right to petition the courts (2) Fourteenth Amendment right to equal protection (3) Fourteenth Amendment right to substantive due process and (4) Fifth Amendment Right to be

free from exactions under the Takings Clause.[1] *See id*; *see also* Mem. in Supp of Mot. to Dism. ("Mot."), ECF No. 16; Pl.'s Mem. in Opp. ("Opp."), ECF No. 27; Def.'s Reply ("Reply"), ECF No. 28. In brief, those claims are premised on various zoning decisions, fees, and permits that defendants allegedly denied, limited, or obstructed.

For the reasons set forth below, I agree with defendants that the SAC largely fails to sufficiently allege its § 1983 claims. I therefore GRANT in part and DENY in part defendants' motion to dismiss. Specifically, I DISMISS all of plaintiff's claims, except for plaintiff's Fifth Amendment Takings Clause claim against the Village.

## BACKGROUND

### I.    Events Alleged in the SAC

Plaintiff is the owner of the parcel of land located at 225 Main Street, Northport, NY (the "Premises"). SAC ¶ 3. Mr. Brojer was the immediate supervisor of the town's Building Inspector, Loary Gunn, and in practice functioned as the Building Inspector. *Id*. ¶¶ 21, 22.[2]

At some point prior to the summer of 2016, plaintiff began planning to develop the Premises into a hotel and restaurant. *Id*. ¶¶ 14–16. By law, plaintiff was required to obtain site plan approval from the Northport Village Planning Board prior to applying for and receiving a building permit. *Id*. ¶ 15. The site plan approval process was "fraught with . . . unreasonable delays and wholly unnecessary obstructions," mostly due to the "machinations" of Mr. Brojer. *Id*. ¶ 20. For example, Mr. Brojer claimed that each of the hotel's rooms was required to have an alternative means of egress, such as a fire escape. *Id*. ¶ 24. Plaintiff's "counsel, architects, and

---

[1] The motion was filed by all defendants except for Mr. Brojer. Mr. Brojer has filed a separate motion to dismiss the claims against him, ECF No. 30, which will be resolved in a separate order.

[2] The SAC does not make clear what responsibilities were carried out by the Building Inspector title, or the role of the Building Inspector in the various municipal application and permitting processes.

engineers" rebutted Mr. Brojer's demands.[3] *Id*. ¶ 25. According to plaintiff, Mr. Brojer bore "ill will" toward plaintiff and its project to develop the Premises. *Id*. ¶ 28.

In the Spring and Summer of 2019, plaintiff and the Village executed an agreement to outsource the site approval process to an outside firm, in order to remove Mr. Brojer from the approval process and expedite proceedings. *Id*. ¶¶ 32–40. At some point prior to February 4, 2020, that outside firm completed the building plan review. *Id*. ¶ 41.

After the site plan review had been completed, plaintiff applied for a Building Permit. In order to issue the Building Permit, the Village demanded a fee in excess of $87,000. *Id*. ¶ 46. That demand was apparently conveyed by Mr. Tesoriero, who at the time was the Village's Plan Examiner. *Id*. ¶ 81. Plaintiff asserts that the Village improperly calculated the fee under the Northport Village Code, and that the properly calculated fee should have been $28,697.30. *Id*. ¶ 46. Although plaintiff continues to dispute the fee, plaintiff paid the full fee under protest on February 4, 2020. *Id*. ¶ 12. On February 4, 2020, the Village granted plaintiff a Building Permit to build a hotel and restaurant on the Premises. *Id*. ¶ 10.

In addition to a variety of claims brought under New York law not at issue here, the SAC asserts a 42 U.S.C. § 1983 claim against all defendants. In a vague series of paragraphs, plaintiff alleges that "[b]oth before and after" plaintiff was issued the Building Permit and paid the $87,000 fee on February 4, 2020, defendants interfered with plaintiff's constitutionally protected rights. SAC ¶ 94. Among other conduct, defendants (1) discriminatorily imposed "illegal and excessive fees"; (2) discriminatorily imposed "irrational and illegal pre-conditions and limitations on permits, approvals, and the issuance of a Certificate of Occupancy"; (3) imposed an "illegal and discriminatory limitation on the number of seats allowed" in plaintiff's restaurant;

---

[3] The SAC does not explain whether Mr. Brojer withdrew his objections to plaintiff's site plan, or whether some other decision-making entity in the Village, such as the Planning Board, rejected Mr. Brojer's demands.

and (4) discriminatorily required plaintiff to "incur completely unnecessary costs in connection with municipal approvals." *Id*. Plaintiff alleges that it "was and is being discriminated against in part because its restaurant will compete with other restaurants in the [Village]" in which "Village officials had ownership or other interests and who were political supporters of Village officials and [Board] members." *Id*. ¶ 99.

In addition, the SAC alleges that Mr. Brojer "engaged in a years-long and multi-faceted campaign of unlawful and discriminatory conduct" against plaintiff, by raising various issues with plaintiff's building plans during the site approval process. *Id*. ¶ 96.

Finally, plaintiff alleges that the defendants "adversely treated and discriminated against" plaintiff in retaliation for filing this lawsuit, by "substantially and artificially" reducing the seating capacity and occupancy of plaintiff's restaurant to be far less than that permitted by the applicable fire and building codes. *Id*. ¶¶ 100, 104. Plaintiff's restaurant was the "only restaurant located in the . . . downtown area of the [Village]" whose seating and occupancy was artificially reduced. *Id*. ¶ 104. For example, the restaurant "Rockin Fish," which is located within several hundred feet of plaintiff's restaurant, was not required to reduce its seating and occupancy below that permitted by the applicable codes. *Id*. ¶¶ 105, 106.

Without explaining which facts are relevant to which constitutional violation, the SAC asserts that the above actions violated its Fourteenth Amendment Due Process rights, Fourteenth Amendment Equal Protection rights, right to be free from exactions under the Fifth Amendment Takings Clause, and First Amendment right to be free from retaliation for having petitioned the courts.

## II.    Procedural History

4

On August 3, 2020, plaintiff commenced this action by filing a complaint in New York Supreme Court, Suffolk County. Notice of Petition (the "Original Complaint), ECF No. 1-2. Plaintiff alleged various state law claims, all of which challenged the Village's Building Permit fee, as either improperly calculated, excessive, or as an unlawful tax. *See id*. On October 21, 2020, plaintiff amended the complaint to add additional allegations. *See* Amended Notice of Petition (the "First Amended Complaint" or "FAC"), ECF No. 1-4. However, plaintiff did not add any new causes of action. *Id*.

On November 27, 2023, Plaintiff sought leave to amend the Amended Complaint and for permission to file the SAC. Defendants opposed the motion. On March 21, 2024, the court issued a one-page Order granting Plaintiff leave to amend the Amended Complaint and denied the cross-motion for a protective order. *See* Order Granting Leave to Amend, Donnelly Dec. Exhibits D, ECF No. 15-4. The SAC newly asserted a claim under 42 U.S.C. § 1983, predicated upon violations of the First, Fifth, and Fourteenth Amendments. *See generally*, SAC. On April 22, 2024, defendants removed this case to this district, citing this court's federal question jurisdiction. Notice of Removal, ECF No. 1.

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. Legal conclusions are not entitled to the presumption of truth, and therefore "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quotation marks and citation omitted).

## DISCUSSION

### I.    Plaintiff's § 1983 Claims Are Not Barred by Limitations on Article 78 Proceedings.

N.Y. Village Law §§ 7-740, 7-725-a provides that an individual aggrieved by a site plan determination of a municipal planning board must bring an Article 78 proceeding within thirty days after the filing of the decision. In their opening brief, defendants argue that plaintiff's § 1983 claims "relat[ing] to any determinations by the [Village] Planning board" are unreviewable due to plaintiff's failure to commence an Article 78 proceeding in New York's state courts. Mot. at 10. According to defendants, Article 78 is the "exclusive" method for challenging village and municipal determinations on site plan and special permit applications, and therefore plaintiff's § 1983 claims were "brought in an improper form and are barred by the statute of limitations" applicable to Article 78 proceedings. *Id*.

Defendants' argument is meritless. Generally, "exhaustion of state [administrative] remedies is not a prerequisite to an action under § 1983" in federal court. *Heck v. Humphrey*, 512 U.S. 477, 480 (1994) (quotation marks omitted). "Only where Congress has carved out specific statutory exceptions to this rule, or where a procedural due process claim puts in issue state post-deprivation remedies, is this general rule abrogated." *Acista v. City of New York*, No. 03-CV-1452, 2004 WL 691270, at *4 (S.D.N.Y. Mar. 31, 2004) (collecting cases). Because the SAC does not assert any procedural due process claims, and defendants do not contend that any of the specific statutory exceptions apply, the availability of relief under Article 78 proceedings does

not impose an exhaustion requirement. Defendants are therefore mistaken in arguing that the § 1983 claims can only be asserted in an Article 78 proceeding. Mot. at 10.[4]

## II.    Plaintiff's Claims of Constitutional Violations Based Upon 42 U.S.C. § 1983 Are Not Time Barred on the Face of the SAC

Defendants contend that plaintiff's § 1983 claims premised on the Fifth and Fourteenth Amendments are untimely. The statute of limitations claims for § 1983 claims are governed by "the statute of limitations for personal injury actions under state law," which in New York is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Defendants concede that plaintiff is entitled to the benefit of New York's 228-day tolling of the statute of limitations due to Covid, *see* Mot. at 11, and therefore plaintiff may assert claims that accrued up to 3 years and 228 days prior to commencing their claims.

Defendants argue that the § 1983 claims "commenced for statute of limitation purposes" on the date that plaintiff moved to amend the complaint to include those claims. *See* Mot. at 11. Since that motion was filed on November 27, 2023, defendants assert that plaintiff may not assert claims that occurred before April 13, 2020. *Id*. According to defendants, plaintiff's § 1983 claims premised on the Fifth and Fourteenth Amendments accrued between February and March 2019, and are therefore untimely. *Id*. at 12.

Defendants are partially mistaken, as their initial motion ignores the relation-back doctrine. Under Rule 15(c)(2), an amended pleading relates back to—*i.e.*, is deemed commenced on—the date of the original pleading when the amendment asserts a claim that "arose out of the conduct, transaction, or occurrence set out" in the original pleading. Fed. R. Civ. P. 15(c)(1)(B).

---

[4] In their Reply, defendants offer a different argument, not raised in their principal brief. Namely, defendants assert that the § 1983 claims are not yet ripe because plaintiff has "failed to proceed . . . in an Article 78 proceeding" and therefore the state has not reached a "final decision." Mot. at 4. However, it is well-established in this circuit that "[a]rguments may not be made for the first time in a reply brief" and that "new arguments first raised in reply papers in support of a motion will not be considered." *Forbes v. Specialized Loan Servicing, LLC*, No. 18-CV-6561, 2020 WL 13659754, at *2 (E.D.N.Y. Sept. 30, 2020).

"[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. Am. Express Co*., 460 F.3d 215, 228 (2d Cir. 2006) (quotation marks omitted). Rule 15(c) also permits relation back if "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(a). Since the statute of limitations for § 1983 claims are governed by state law, *see Hogan v. Fischer*, 738 F.3d at 517, plaintiff's § 1983 claims also relate back if permitted by New York's relation back rules. As provided by N.Y.C.P.L.R.§ 203(f), amended claims relate back "unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.Y. C.P.L.R. § 203(f).

In their reply, defendants contend that relation back is inapplicable because the Original Complaint and the FAC "set forth only common-law state court claims," and "did not set forth any federal claims" nor "invoke[] any federal rights statute." Reply at 5. That argument rests on a misreading of Rule 15. For relation back purposes, the plaintiff need not have invoked the same legal theory or cause of action in her earlier pleadings; the entire purpose of relation back is to permit plaintiffs to assert new causes of action. Rule 15(c)(1)(A), by its terms, directs courts to examine whether the original and amended pleadings assert claims arising from the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(1)(A). Thus, what matters is whether the claim "ar[ose] out of the *conduct* set forth in the original pleading." *Slayton*, 460 F.3d at 228 (emphasis added and quotation marks omitted); *see also id.* ("the central inquiry is whether adequate notice" was given "by the general *fact situation* alleged in the original pleading."

(emphasis added and quotation marks omitted)).[5] Accordingly, plaintiff's failure to invoke §
1983 in their prior pleadings is no impediment.

Nonetheless, I agree with defendants that at least part of plaintiff's Fifth and Fourteenth
Amendment claims do not relate back to their Original or First Amended Complaints. The
Original and First Amended Complaints asserted claims that were limited "to the calculation of
and collection of an unlawfully levied fee for the issuance of the [Building Permit]." FAC ¶ 38.
However, in a section titled "History Antedating the Present Matter Before the Court," the
Original and First Amended Complaints allege that the Village Planning Board imposed
"unreasonable delays and wholly unnecessary obstructions," such as Mr. Brojer's attempts to
claim that each hotel room required a separate exit and "that the International Building Code
limited the size of the hotel restaurant." *Id*. ¶¶ 18, 22. Those objections were "rebutted," but only
after plaintiff had expended "substantial wasted time and money." *Id*. ¶¶ 21–22.

Meanwhile, the SAC alleges four categories of wrongs which assertedly violated
plaintiff's constitutional rights, though it does not clearly articulate which wrong purportedly
violated each right. First, the permit fees were an unlawful deprivation of property. SAC ¶ 94.
Second, defendants arbitrarily and discriminatorily imposed delays, limitations, and costs on
plaintiff during the Building Permit and Site Plan Application process. *Id*. ¶¶ 94, 96. Third,
defendants unlawfully limited the number of seats allowed at plaintiff's restaurant. *Id*. ¶ 94.
Fourth, defendants imposed unlawful limitations on "the issuance of a Certificate of Occupancy."
*Id*.

The first two categories arise from the same "conduct, transaction or occurrence" as facts
alleged in the prior pleadings. Both the SAC and the Original Complaint set forth challenges to

---

[5] By contrast, "even where an amended complaint tracks the legal theory of the first complaint, claims that are based
on an entirely distinct set of factual allegations will not relate back." *Id*. (quotation marks omitted).

the Village's permit fees and permitting process, and therefore provide adequate notice that plaintiff sought to challenge those actions. Since the Original Complaint was filed on October 3, 2020, and defendants concede that plaintiff's claims as to those incidents accrued in 2019, *see* Mot. at 12, those categories of § 1983 claims are within the three-year statute of limitations and are therefore timely.

By contrast, the latter two categories concern facts that do not relate back to the prior pleadings. The Original and First Amended Complaints do not mention, or even suggest, that defendants restricted the seating capacity of plaintiff's restaurant or limited the Building's Certificate of Occupancy. Accordingly, the prior pleadings did not provide adequate notice that such conduct was at issue or might later be raised in an amended pleading. Because such notice is a central inquiry of relation back under Rule 15(c)(1)(B) and N.Y.C.P.L.R.§ 203(f), any § 1983 claim premised on the latter two categories does not relate back to the original complaint. *See Cady v. Springbrook NY, Inc.*, 145 A.D.3d 846, 847 (2d Dep't 2016) (noting that N.Y.C.P.L.R.§ 203(f) does not permit relation back where "the original allegations did not provide the defendants notice of the need to defend against the allegations of the amended complaint"); *Slayton*, 460 F.3d at 228 (2d Cir. 2006) (noting that Rule 15(c) requires the prior pleading to have given notice of the allegations to be raised in the amended pleading).

Nonetheless, I cannot agree with defendants, at this stage, that the latter categories of claims are time-barred. "A statute of limitations affirmative defense normally cannot be decided on a motion to dismiss," unless "the defense appears on the face of the complaint." *Markel Am. Ins. Co. v. Mr. Demolition, Inc.*, 717 F. Supp. 3d 238, 244 (E.D.N.Y. 2024) (quotation marks omitted). Here, the SAC does not provide even general time periods for when defendants limited the seating occupancy of plaintiff's restaurant or restricted the Building's Certificate of

10

Occupancy. Given the lack of time frames, the accrual date for plaintiff's claims cannot be determined from the SAC.[6]

I therefore DENY defendant's motion to dismiss plaintiff's § 1983 claims as barred by the statute of limitations.

## III.    The SAC Fails to State a First Amendment Retaliation Claim

The SAC alleges that defendants unlawfully retaliated against plaintiff based on its initiation of this lawsuit, in violation of plaintiff's First Amendment right to petition the courts. SAC ¶ 100. I agree with defendants that the SAC fails to sufficiently allege such a claim.

To state a First Amendment retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quotation marks omitted). The right to petition the courts is a First Amendment interest, and therefore plaintiff's initiation of this lawsuit was a protected First Amendment activity. *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002).

Nonetheless, the SAC fails to state a First Amendment claim because it fails to identify any adverse actions taken after plaintiff initiated the present case on August 4, 2020. Instead, plaintiff merely alleges that "adverse and discriminatory treatment continued" after initiation of this proceeding, which "included additional steps and efforts to block and drive up the costs of the opening of the Northport Hotel." SAC ¶ 102. Such conclusory allegations are plainly insufficient. *See Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (noting that "allegations which are nothing more than broad, simple and conclusory statements are

---

[6] Conversely, the SAC's failure to allege even general time periods leads many of those claims to fail on their merits, as discussed below.

insufficient"). Plaintiff fails to clearly identify when those "additional steps" occurred, or even what those "additional steps" were. SAC ¶ 102.

At best, the SAC alleges that defendants "substantially reduce[d] the maximum seating capacity and occupancy to a level far below the maximum . . . permitted by . . . [the] applicable codes" and restricted the Building's Certificate of Occupancy. *Id*. ¶¶ 106, 111. However, the SAC provides no indication that such actions post-dated this suit. Nor does the SAC sufficiently allege that such actions were motivated by this litigation.

Indeed, although the SAC does not identify when or how defendants imposed the seating reduction, its allegations strongly suggest that the complained-of reduction preceded the commencement of litigation. For example, defendants allegedly made "extortionate demands" to reduce the restaurants seating as early as September 26, 2018, two years before this lawsuit was initiated. SAC ¶¶ 97, 101. In addition, plaintiff does not contest defendants' representations that they reduced the restaurant's seating capacity more than a year before the instant litigation, during the Village's approval of plaintiff's site plan application on March 25, 2019. *See* Mot. at 2.[7] Given that defendants apparently imposed the seating reduction far in advance of this suit, it is impossible for the seating reduction to have been caused by the initiation of this suit.

Even assuming that the seating reduction had post-dated this suit (a fact absent from the SAC), the SAC fails to adduce any facts suggesting causation. Instead, the SAC merely offers the conclusory assertion that defendants "adversely treated and discriminated against [plaintiff] in retaliation" for plaintiff's exercise of its right to petition the courts. SAC ¶ 100. That is plainly

---

[7] Although the seating capacity was apparently further reduced on July 14, 2022, plaintiff does not contest that *plaintiff voluntarily initiated the reduction* when it sought, and received, Village approval of a modified site plan that would increase the number of rooms in its hotel and reduce the size of its restaurant. *See* Mot. at 2. Plaintiff offers no explanation for how approval of its own request constitutes an adverse action. Indeed, the SAC and plaintiff's briefing do not even attempt to explain which seating reduction is the basis for its retaliation claim, or when that reduction occurred.

insufficient. *See Schubert v. City of Rye*, 775 F. Supp. 2d 689, 713-14 (S.D.N.Y. 2011) (dismissing First Amendment retaliation claim where plaintiff relied on "boilerplate allegations" and facts alleged failed to "plausibly support[] an inference of retaliatory motive"). To the extent that the SAC pleads any facts at all, they undermine an inference of retaliatory motive. For example, the SAC alleges that the Village's prior "extortionate demands to reduce the number of seats at its restaurant[] were exposed" during this litigation. SAC ¶ 101. But again, those demands predate this litigation and therefore could not have been motivated by this suit.

Similarly, the SAC fails to provide sufficient facts regarding the alleged restrictions on the Building's Certificate of Occupancy. Indeed, the SAC provides *no* facts, and instead merely alleges that defendants imposed "irrational and illegal" or "unlawful" restrictions on "the issuance of a Certificate of Occupancy." SAC ¶¶ 94, 111. I cannot accept that threadbare legal conclusion.[8] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (quotation marks omitted)). The SAC is silent on when defendants restricted the certificate, nor does it explain what those restrictions even were.[9] Although the parties' briefing supplies some of those facts, assertions contained in legal memoranda are not properly before the court in evaluating the sufficiency of a complaint. *See Stratakos v. Nassau County*, No. 15-CV-7244, 2016 WL 6902143, at *5 (E.D.N.Y. Nov. 23,

---

[8] Plaintiff was issued a 180-day "Temporary Certificate of Occupancy" on July 27, 2023. *See* Temporary Certificate of Occupancy, ECF No. 15-11. Plaintiff's building did not receive a plenary Certificate of Occupancy because the building contained an overhang projection onto a neighboring property, in violation of N.Y.S. Build. C. §705.2. *Id.* The Temporary Certificate of Occupancy provided that a plenary Certificate of Occupancy "for the entire structure with the projections intact" would "be determined via agreement with the adjoining owner or outcome of litigation or further proceedings with the adjoining owner or application to municipal boards or agencies with jurisdiction over the encroachment resulting in a determination of the encroachment issue." *Id.*

Plaintiff concedes that it has encroached on its neighbor's property, but contends that the encroachment is *de minimis* and thereby inactionable under New York law. Opp. at 15 (collecting cases). In plaintiff's view, defendant's decision to delay issuance of a plenary Certificate of Occupancy was therefore "based on a meritless and pretextual" violation. *Id.*

[9] Although the parties' briefing indicates that the refusal occurred on July 27, 2023, three years after initiation of this suit, the SAC fails to allege that date. *See* SAC ¶ 94.

2016) (noting that statement contained in legal memorandum but not complaint is "not directly relevant to the Court's evaluation of the pleading"). Given the vagueness of the SAC, I cannot conclude that plaintiff has stated a First Amendment claim based on its scattered references to the Certificate of Occupancy.[10]

For the above reasons, I GRANT defendants' motion to dismiss the First Amendment Claim.

## IV.    The SAC Fails to State a Fourteenth Amendment Equal Protection Claim

The SAC also asserts that defendants engaged in various discriminatory actions that violated plaintiff's right to Equal Protection under the Fourteenth Amendment. SAC ¶ 108. The Second Circuit "has identified two distinct pathways under which a plaintiff can assert a 'non-class-based Equal Protection violation'": (1) a selective enforcement (*LeClair*) claim and (2) a class of one (*Olech*) claim. *Demarest v. Town of Underhill*, No. 24-147, 2025 WL 88417, at *2 (2d Cir. Jan. 14, 2025) (citing *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019)). I agree with defendants that plaintiff has failed to state a claim under either pathway.

### A.    Selective Enforcement

To allege a selective enforcement claim under *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980), a plaintiff must allege "both (1) that [it] was treated differently from other similarly situated businesses and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Cine SK8, Inc. v. Town of Henrietta*,

---

[10] Indeed, plaintiff's claim would fail even if I were to take judicial notice of the Temporary Certificate of Occupancy. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995) (noting that a court may consider a document "upon which [the complaint] solely relies and which is integral to the complaint). The SAC is totally devoid of allegations demonstrating that the limitations to the Certificate of Occupancy were motivated by retaliatory animus.

507 F.3d 778, 790 (2d Cir. 2007) (quotation marks omitted). The test "requires proof of disparate treatment and impermissible motivation," and a plaintiff cannot merely rest on a demonstration of different treatment, but must also "prove that the disparate treatment was *caused by* the impermissible motivation." *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005).

The first prong of a selective enforcement claim requires a plaintiff to identify a comparator whose circumstances "bear a reasonably close resemblance" to that of the plaintiff. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted). They need not, however, be "identical." *Id.* Nevertheless, the plaintiff must still show that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Hu*, 927 F.3d at 96 (quotation marks omitted).

The SAC broadly alleges four classes of "discriminatory" actions. First, plaintiff alleges that defendants imposed: (1) "excessive fees," (2) "limitations on permits, approvals, and the issuance of a certificate of occupancy," (3) requirements that caused plaintiff "to incur completely unnecessary costs in connection with municipal approvals," and (4) a "limitation on the number of seats allowed in [plaintiff's] restaurant." SAC ¶ 94. However, the SAC does not allege any comparators for the first three categories of actions and therefore fails to state a claim for selective enforcement premised on those actions. *See Hu*, 927 F.3d at 99 (noting that a selective enforcement claim requires specific examples of similarly situated comparators).

Meanwhile, the SAC does identify a single comparator for the fourth category of action. Specifically, the SAC alleges that the "Rockin Fish" restaurant, which is located "within several hundred feet of [plaintiff's] restaurant premises," was not required to "substantially reduce" its seating capacity. SAC ¶¶ 105–06. That allegation is insufficient. In *Hu*, the Second Circuit considered it a "close" question as to whether the plaintiffs in that case were similarly situated to

other workers who were differentially treated "by the same defendant . . . for the same conduct . . . at the same jobsite." *Hu*, 927 F.3d at 97. Here, plaintiff offers even fewer details. The SAC does not allege the square footage of either its own restaurant or Rockin Fish. Nor does the SAC allege the maximum occupancy assessed by the Village and the maximum occupancy requested by either restaurant. Indeed, the SAC does not even allege when each restaurant's maximum occupancy was assessed, or whether they were assessed by the same government officials or entities. Although the "failure to plead . . . fact-specific details should not bar" a selective enforcement claim, a plaintiff must still plead sufficient facts to reasonably infer that the plaintiff is similarly situated to the comparator "in all material respects." *Id.* at 98–99. Plaintiff has failed to do so here

Even if plaintiff had identified suitable comparators, the SAC would fail for lack of causation. *See Bizzarro*, 394 F.3d at 87 (noting that a selective enforcement claim requires proof that the state action was caused by an improper motivation). Plaintiff offers nothing more than bare allegations that one or more defendants harbored "ill will" or sought to prevent plaintiff from competing with restaurants owned by village officials or their political supporters. SAC ¶ 94. However, the SAC is totally bereft of facts indicating that defendants actually harbored such motives, much less that those motives caused their actions.

For the above stated reasons, I GRANT defendants' motion to dismiss plaintiff's Fourteenth Amendment selective enforcement claims.

### B.    Class of One

To state a "class of one" equal protection claim, a plaintiff must allege that he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Unlike a selective enforcement claim, a class of one claim does not require allegations evincing

16

that the defendant was motivated by improper considerations. *See Hu*, 927 F.3d at 94 (noting that class of one claims "do[] not require proof of a defendant's subjective ill will towards the plaintiff"). However, the plaintiff must allege *specific examples* of comparators that are "so identical as to exclude the possibility that [defendant] acted on the basis of a mistake." *Id.* at 100; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (dismissing an *Olech* claim for failure to "allege specific examples" of similarly situated comparators).

The SAC fails to satisfy the "stringent similarity standard for an *Olech* Claim." *Hu*, 927 F.3d at 100. As discussed above, the SAC identifies only a single comparator, the Rockin Fish restaurant. Given that the SAC fails to allege sufficient facts under the "lower similarity standard" applicable to selective enforcement claims, it necessarily fails to satisfy the "extremely high similarity standard" applicable to class of one claims. *Id.* at 94, 95. I therefore GRANT defendants' motion to dismiss plaintiff's equal protection claim.

## V.    The SAC States a Fifth Amendment Takings Claim

The SAC alleges that the Building Permit fee was an unlawful "exaction," SAC ¶ 77, in violation of the Takings Clause of the Fifth Amendment, which provides that "private property" shall not "be taken for public use, without just compensation," U.S. Const. Amend. V. The Supreme Court has explained that there exist two types of takings. First, the government commits a "per se taking" when "the government physically acquires private property for a public use," and in such cases the government has a "categorical obligation to provide the owner with just compensation." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147–48 (2021). Second, the government commits a "regulatory taking" "when the government . . . imposes regulations that restrict an owner's ability to use his own property" that "goes too far." *Id.* (quotation marks omitted).

Plaintiff's claim that the Building Permitting fees were excessive and unlawful falls within the per se takings doctrine. "[W]hen the government commands the relinquishment of funds linked to a specific, identifiable property interest such as a bank account or parcel of real property, a 'per se [takings] approach' is the proper mode of analysis under the Court's precedent." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 614 (2013) (citation omitted). Although that language suggests that applications for land-use permits are subject to the ordinary *per se* takings analysis, permitting conditions are a "special application" of the *per se* takings doctrine governed by the Supreme Court's decisions in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). Under those cases, the government is allowed "to condition approval of a permit on the dedication of property to the public so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal. *Koontz*, 570 U.S. 595, 605–06 (2013). Critically, "the government's demand for property" must satisfy the nexus and rough proportionality requirements even where the "demand is for money" rather than use of the property. *Id*. at 619.

Defendants' sole argument is that "payment of a fee upon the submission of the Application for the Building Permit does not constitute a monetary exaction" as "it has no effect whatsoever on the proposed land use." Reply at 9. But as *Koontz* makes clear, building permit fees must satisfy *Nollan* and *Dolan*. *Koontz*, 570 U.S. at 618–19 (noting that the Takings Clause applies to permitting fees given the "special vulnerability of land use permit applicants to extortionate demands for money"). Moreover, building permit fees must satisfy the nexus and proportionality requirements regardless of whether they result from legislation or administrative action. *See Sheetz v. County of El Dorado, California*, 601 U.S. 267, 279–80 (2024).

Accordingly, defendant's sole argument in favor of dismissal is unavailing. *Koontz* and *Sheetz* plainly permit plaintiff to challenge both the Village's legislatively enacted schedule of building permit fees and the manner in which those fees were calculated by its administrators.[11] I therefore DENY defendants' motion to dismiss plaintiff's claim that the building permit fees were an unlawful exaction of property in violation of the Takings Clause.

## VI.    The SAC Fails to State a Substantive Due Process Claim

To state a claim for substantive due process, a plaintiff must allege that: (1) he "had a valid property interest" and (2) the "defendants infringed on that property right in an arbitrary or irrational manner." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014) (quotation marks omitted). To be "arbitrary in the constitutional sense," *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992), the challenged "state action [must have been] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Okin v. Vill. of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quotation marks omitted).

Plaintiff first asserts that the funds it used to pay the unlawful permit fees constitutes a "property interest" protected by substantive due process. SAC ¶ 94. That may be so. Nonetheless, plaintiff cannot premise its substantive Due Process claim on the loss of that money. "Where another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Kia P. v. McIntyre*, 235 F.3d

---

[11] Defendants make no argument that plaintiff has failed to allege that the Building Permit fees lacked a nexus and proportionality to the Village's land use interests. Defendants also do not argue that the permit application fees are a tax, which the Supreme Court has repeatedly affirmed are not subject to the Takings Clause. *See Koontz*, 570 U.S. at 615. I therefore do not consider those issues in deciding the instant motion. *See United States v. Marrero*, No. 22-2030, 2024 WL 1253643, at *3 n.4 (2d Cir. Mar. 25, 2024) ("arguments not raised in a principal brief—let alone not raised even in the reply—are considered waived").

749, 757–58 (2d Cir. 2000) (quoting *Conn v. Gabbert*, 526 U.S. 286, 293 (1999)). As discussed above, plaintiff already alleges that the payment of the permitting fees was an unlawful exaction in violation of the Takings Clause. Accordingly, plaintiff cannot assert a duplicative substantive due process claim premised on that precise conduct. *See Yu v. Inc. Vill. of Oyster Bay Cove*, 579 F. Supp. 3d 391, 398 (E.D.N.Y. 2022) (barring malicious prosecution claim under Due Process clause "since such claims may be brought under the Fourth Amendment").

Second, plaintiff asserts that it had a vested interest in the "actual Building Permit that was issued." Opp. at 18. Even assuming that the Building Permit is a property interest, the SAC fails to allege any conduct that infringed upon the permit. There are no allegations that defendants revoked or modified the Building Permit. As far as can be understood from the SAC, plaintiff received a Building Permit that has stood unchanged since its inception. I fail to understand how that violates substantive due process.[12]

Third, and finally, plaintiff asserts that it had a property interest in the Certificate of Occupancy. As discussed above, the SAC's allegations are vague and threadbare. The complete absence of facts surrounding the Certificate of Occupancy defeats plaintiff's claim, and I cannot conclude that the Certificate of Occupancy constitutes a property interest or that defendants infringed upon the Certificate of Occupancy in an arbitrary or irrational manner.

I therefore GRANT defendants' motion to dismiss the substantive due process claims.

## VII.    The SAC Fails to State a Claim Against the Board and the Individual Defendants

Finally, I agree with defendants that the claims against the Village Board of Trustees and the Individual Defendants should be dismissed. The Board of Trustees is merely an administrative arm of the municipality and cannot be sued as an independent entity. *See*

---

[12] Nor can plaintiff premise its claims on the Certificate of Occupancy. As discussed above, the SAC's allegations are too vague and threadbare to conclude that the limitations on the Certificate of Occupancy violated due process.

*Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) (holding under New York law that "[t]he only proper defendant in a lawsuit against an agency of a municipality is the municipality itself"); *T-Mobile Northeast LLC v. Town of Ramapo*, 701 F. Supp. 2d 446, 463 n.5 (S.D.N.Y. 2009) (holding that town board is not an independent legal entity and that proper defendant was town). Since Northport Village is the proper defendant and is already named as a defendant in this case, I GRANT the motion to dismiss all claims asserted against the Board of Trustees.[13]

Likewise, the SAC largely fails to state a claim against any of the Individual Defendants. An official-capacity claim "is not a suit against the official but rather is a suit against the official's office," and "is no different from a suit against the State itself." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quotation marks omitted). As a result, an official capacity suit "merge[s] into [the] claims against the [government entity]." *Quinones v. City of Binghamton*, 997 F.3d 461, 466 n.2 (2d Cir. 2021). Thus, any claims asserted against the Individual Defendants in their official capacities are duplicative, and I GRANT defendants' motion to dismiss those claims.[14]

---

[13] Although plaintiff asserts that this argument is waived, "[a]n amended complaint . . . supersedes the original and entitles a defendant to raise substantive arguments aimed at 'judicial resolution of the controversy' in a new responsive pleading, even if those arguments were not raised in response to the original complaint." *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006). Defendants have timely raised the Board of Trustees' lack of capacity in response to the SAC, which they have not yet answered.

[14] I note that defendants argue that all of plaintiff's 1983 claims against the Village should be dismissed for failure to satisfy *Monell*, which sets forth the standard to impose liability against a municipality. As the Second Circuit has explained, a municipality can only be held liable if "(1) a municipal policy or custom [] (2) cause[d] the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). I need not decide that issue, as plaintiff's § 1983 largely fail even assuming the SAC establishes municipal liability, and the sole remaining claim was plainly part of a municipal policy or custom. Plaintiff's Takings Clause claim alleges that the Village's permitting and land use fees are excessive, and those fees are imposed and calculated pursuant to the Village's legislatively enacted code.
Nonetheless, I note that plaintiff's *Monell* allegations are threadbare and largely recite the applicable legal standard. *See e.g.*, SAC ¶ 92 (alleging that defendants "at all relevant times acted pursuant to official policy . . . approved by the Village and its policymakers"). Plaintiff is advised that, should it wish to amend its dismissed claims, it must allege facts rather than merely reciting legal principles.

However, defendants go too far in arguing that the defendants were sued exclusively in their official capacity simply because they undertook the "alleged conduct in their official capacities." Mot. at 25. An individual official may be held liable in his personal capacity even where the wrongful actions were taken in their official capacity. *Hafer*, 502 U.S. 27 (noting that § 1983 liability turns "on the capacity in which state officials are sued," rather than "on the capacity in which they acted when injuring the plaintiff"). Admittedly, the SAC does not articulate whether any Individual Defendant is being sued in his individual capacity. And plaintiff does not even address the Individual Defendants' arguments for the dismissal of claims, much less draw an individual/official capacity distinction. I therefore deem plaintiff to have conceded that the SAC asserts only official-capacity claims and dismiss all claims against the Individual Defendants. *See Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 86 (E.D.N.Y. 2019) ("a party 'concedes through silence' arguments made by its opponent that it fails to address"). Plaintiff may replead any individual capacity claims.[15]

**CONCLUSION**

In sum, I GRANT in part and DENY in part defendants' motion to dismiss the SAC's Seventh Cause of Action, asserting plaintiff's § 1983 claims. First, I GRANT DISMISSAL of the claims asserted against the Village Board of Trustees and against the individual defendants in their official capacities. Plaintiff is DENIED permission to amend claims against those

---

[15] I note that to plead individual capacity claims, a plaintiff must plead that the official was personally involved in the alleged constitutional deprivation. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983."). For at least five of the seven individual defendants, McMullen, Maline, Kehoe, Smith, and Milligan, the SAC pleads only a rote recitation that those defendants were "personally involved in the constitutional violations" because they were "aware of," "condoned and approved," and "personally participated in" "the alleged misconduct of Brojer, the Village, and the Village Board." SAC ¶ 93. "A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant . . . was personally involved in a constitutional violation, cannot withstand dismissal." *Davis v. County of Nassau*, 355 F.Supp.2d 668, 677 (E.D.N.Y. 2005). Thus, plaintiff's individual capacity claims would largely fail even if plaintiff had not conceded that point by failing to address it.

defendants, as they are futile as a matter of law. *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) ("It is well established that leave to amend a complaint need not be granted when amendment would be futile."). Second, I GRANT DISMISSAL of the claims asserted against the individual defendants in their individual capacities, except for the claims asserted against Mr. Brojer.[16] Although I am doubtful that plaintiff will be able to marshal sufficient facts to assert individual capacity liability, in an abundance of caution and "liberal amendment policy of Rule 15(a)," I GRANT plaintiff permission to amend any individual capacity claims. *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 361 (2d Cir. 2023) (quotation marks omitted).

As for the claims asserted against the Village, I GRANT DISMISSAL of plaintiff's § 1983 claims premised on theories of (1) First Amendment Retaliation, (2) Fourteenth Amendment Substantive Due Process, and (3) Fourteenth Amendment Equal Protection. Although those claims appear to be frivolous, I GRANT plaintiff leave to amend them. Plaintiff is warned, however, that any amendment must allege facts and cannot simply regurgitate legal standards, and that pursuit of claims without a basis in fact or law may result in Rule 11 sanctions. Finally, I DENY DISMISSAL of plaintiff's § 1983 Takings Clause claim against the Village.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:          September 30, 2025
                Brooklyn, New York

---

[16] Mr. Brojer has filed a separate motion to dismiss the claims against him, which will be resolved in a separate order.